## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| **GEORGE P. BRANHAM, JR.,** | ) | **Civil Action No. 6:22-cv-00042** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **CITY OF LYNCHBURG,** *et al.*, | ) | **By: Norman K. Moon** |
| **Defendants.** | ) | **Senior United States District Judge** |

This civil action, filed by plaintiff George P. Branham, Jr., a Virginia inmate proceeding *pro se*, asserts claims pursuant to 42 U.S.C. § 1983. Branham's complaint arises from incidents that occurred after his arrest on some unspecified date and while he was waiting for his family to post bond, and it names only two defendants: City of Lynchburg ("the City") and the Blue Ridge Regional Jail Authority ("the Jail Authority"). (Compl., Dkt. No. 2.) Both defendants have filed motions to dismiss, which are fully briefed and pending before the Court. For the reasons set forth herein, the motions to dismiss will be granted, but the Court will dismiss plaintiff's claims without prejudice and allow him to file an amended complaint, if he so chooses.

## I.  BACKGROUND

According to the allegations in his complaint and an attached statement of facts, Branham was sick when he arrived at an unspecified jail facility. As defendants did in their filings, the Court will assume that the facility was the Lynchburg Adult Detention Center ("LADC"), which is located within Lynchburg and operated by the Jail Authority. Branham's complaint itself does not give any dates as to when these events occurred, but in a later-filed document he indicates that the events occurred on or around June 6, 2022. (Dkt. No. 8, at 1.)

Upon arrival, Branham's symptoms included burning and painful attempts to urinate. He states also that he was dripping white pus into his boxers and later had blood dripping into them. He claims he began banging on the cell door, trying to get someone to help him, but he was ignored. Instead, he tried to sleep, but the infection was making him weak and dehydrated.

(Notes to Compl. 1–2, Dkt. No. 2-1.)

Branham also claims that the plumbing in his cell was broken and so there was no running water to drink. The only water in the cell was the water in the toilet. He claims that he was getting weaker and weaker, was dehydrated, and feeling faint, and that he continued to cry for help. He kept yelling that he had no running water and was sick. Every so often some unidentified person would yell out that there was no nurse here and would tell him that he would be okay. But his infection worsened, he had no way to clean himself, and he was in pain. So, he had to make an "inhumane" choice, and he elected to drink water from the toilet, after flushing it a few times. (*Id.* at 3–7.)

After he had been left in the cell this way for about 50 hours, a nurse asked him for a urine sample, and he was given a cup to use. He placed the sample in the food tray slot as directed, but no one ever picked it up. He was finally given a shower and got to see the nurse in her office. Because she had forgotten to get the urine specimen, which was too "old" at that point, Branham was required to give a new urine sample. (*Id.* at 7–9.)

After his fresh sample was analyzed, the physician told him it was a "bad" urinary tract infection ("UTI"). (*Id.* at 9.) "They" ordered medication for Branham, and then his family was able to post his bond. Thereafter, Branham was able to get treatment at a local medical clinic in Lynchburg. (*Id.*) Branham also states that there is security camera footage of him in his cell and so defendants "can't lie out of this." (*Id.* at 12.)

Because of the days-long denial of water and medical care, Branham suffered both physical and mental pain. He has nightmares as a result of the "ordeal," and he is now afraid to use public bathrooms. (*Id.* at 10–11; *see also* Compl. 4.) For relief, he seeks $59 million in damages. (Compl. 4.)

## II.   DISCUSSION

As noted, both defendants have filed motions to dismiss under Rule 12(b)(6), which test the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[1]  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In considering the motion, the Court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party."  *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).  But a court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments."  *Giarratano*, 521 F.3d at 302.

## A.   City of Lynchburg's Motion to Dismiss (Dkt. No. 19)

The City seeks dismissal on the grounds that Branham has failed to allege facts sufficient to hold it liable.  First, the City correctly notes that the complaint states no basis for a claim against it.  For example, the complaint does not state that the City did anything, and it does not allege that the City operates the jail where Branham was held or employs the correctional officers.

Even if those allegations had been included, however, the complaint still fails to state a claim.  "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, a local government such as the City is liable under § 1983 only when the entity itself is a

---

[1]  The court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted.

"moving force" behind the deprivation.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981).  That is, the entity's official policy or custom must have played a part in the alleged violation of federal law.  *Oklahoma City v. Tuttle*, 471 U.S. 808, 817–18 (1985).  Branham does not allege that any official policy or custom of the City was responsible for the violations or injuries he allegedly suffered.  Thus, he fails to state a *Monell* claim.

**B.  The Jail Authority's Motion to Dismiss (Dkt. No. 21)**

The Jail Authority seeks dismissal of the claims against it on the grounds that is it not subject to suit under § 1983 because it is an arm of the Commonwealth of Virginia, citing for support to *Painter v. Blue Ridge Regional Jail Authority*, No. 6:17-cv-00034, 2017 WL 3725993 (W.D. Va. Aug. 29, 2017), which was decided by the undersigned.  In pertinent part, *Painter* held that "BRRJA is not subject to suit under § 1983 because it is an arm of the Commonwealth of Virginia."  *Id.* at *5.  It appears, however, that *Painter* overlooked the Fourth Circuit's decision in *Kitchen v. Upshaw*, 286 F.3d 179 (4th Cir. 2002), which held that regional jail authorities are *not* arms of the state and are subject to suit under § 1983.  286 F.3d at 184.  Thus, the Court will not dismiss on the basis of *Painter*, as the Jail Authority urges.

Nonetheless, even though regional jail authorities can be sued under § 1983 for a *Monell*-type claim, it is clear that Branham's allegations do not state a valid claim.  As with Branham's allegations against the City, his allegations against the Jail Authority fails to allege that there was a policy or practice of engaging in the behavior that he alleges was unconstitutional.[2]  Thus, the complaint fails to allege any facts to support the elements of a *Monell* claim.

Although the Court is dismissing the claims against both named defendants, it notes that

---

[2]    Branham filed several documents in response to the motions to dismiss, only the first of which was an authorized and timely response.  (Dkt. Nos. 25, 30, 32, 33.)  In his most recent one (Dkt. No. 33), he states that "functioning skinks, toilets, and showers, are basic necessities" and that the "plumbing in Unit #3," at either the facility he was in before, or at the facility he is in now "is so inadequate and in such a state of [dis]repair as to constitute a serious threat" to inmates.  (Dkt. No. 33, at 1.)  To the extent that is the basis for any *Monell* claim against the Jail Authority, those allegations do  not appear in his complaint, which mentions only the non-working sink in his own cell.  And it is well established that a party may not amend its complaint through briefing.  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

similar types of claims are often brought against specific individuals who work at a jail or prison. Branham, however, has not named any individual defendants, either by name or as John Doe defendants. Accordingly, his complaint in its current form is subject to dismissal. In consideration of his *pro se* status, however, the Court will grant him leave to amend, should he so choose.

## C.  Other Motions by Branham

Also pending before the Court are four motions filed by Branham. Technically, these are mooted by the dismissal of Branham's claims and this case. But because the Court is allowing Branham to file an amended complaint if he so chooses, the Court will address the substance of some of the motions.

### 1.  Motions for Summary Judgment (Dkt. No. 9) and for Discovery (Dkt. No. 31)

A letter from Branham docketed as a motion for summary judgment (Dkt. No. 9) is premature, in that it was filed before defendants even responded to the complaint. In any event, because his claims against the named defendants are subject to dismissal, his motion for summary judgment must be denied. Similarly, his motion for discovery must be denied without prejudice as there are not currently any active claims before the Court.

### 2.  Motion for Transfer (Dkt. No. 17)

Branham also has filed a letter motion requesting to be moved from the Amherst County Adult Detention Center, where he was housed at the time of his motion, to a federal mental health holding center. (Dkt. No. 17.) The Court construes his request as a motion for preliminary injunctive relief, which it will deny.[3]

There are a number of problems with Branham's request. First, the only relief Branham

---

[3]  This motion also states that he is a pretrial detainee and is being denied mental health treatment. He states that he has PTSD as a result of the incidents alleged in the complaint, and that instead of providing mental health treatment to him, he was placed in a suicide cell and kept there for eight hours. If Branham wants to make a claim about treatment that occurred at a separate facility and after he was returned to custody, he should file a separate civil rights action asserting those claims.

requests is a transfer, which generally is not an appropriate injunction for a federal court to issue. Indeed, the decision about where to house any particular inmate, however, is generally committed to the discretion of the state's prison officials, and a federal court must show deference to such decisions. *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980).

Second—and importantly—preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). To obtain a preliminary injunction, the party seeking it must demonstrate: (1) by a "clear showing," that he is likely to succeed on the merits at trial; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20–22 (2008). It is clear that Branham cannot satisfy at least the first of these elements at this time. Because the Court has dismissed his claims, he fails to show a likelihood of success on the merits as to his current claims.

For all these reasons, his motion to transfer, or for preliminary injunction, will be denied without prejudice.

### 3.   Motion to Appoint Counsel (Dkt. No. 26)

Branham already filed one motion for appointment of counsel, which was denied. (Dkt. Nos. 3, 7.) He has now filed another motion for counsel, in which he explains that the case is no longer "routine" or complex because he had someone at his current facility to help him, but that person is no longer available. (Dkt. No. 26, at 3.) He also attaches a letter from one attorney stating that he is not able to represent Branham. (*Id.* at 5.) The Court will deny this motion for the same reasons that it denied his first motion. Specifically, and as the prior order advised,

> A court cannot require an attorney to represent an indigent civil plaintiff, and may request that an attorney represent such a plaintiff only in "exceptional circumstances." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances depend on the type and complexity of the case and the ability of the plaintiff to

6

present it.  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 290 U.S. 296, 309 (1989).

Here, the issues in this case are fairly routine and not particularly complex. Regarding Branham's mental illness, the court notes that Branham has been able to adequately communicate with the court and state his allegations. Based on the filings and early stage of the case, Branham appears competent to litigate the case himself.

(Aug. 31, 2022 Order, Dkt. No. 7.)

## III.  CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss (Dkt. Nos. 19, 21) will be granted, and all claims against the current defendants will be dismissed.  Additionally, Branham's motion for summary judgment (Dkt. No. 9) and his motion requesting a transfer (Dkt. No. 17) will be denied.  His motion to appoint counsel (Dkt. No. 26) and his motion for discovery (Dkt. No. 31) will be denied without prejudice.  If Branham believes he can remedy the deficiencies described by the Court, and if he so chooses, he may file a motion to reopen with a proposed amended complaint within thirty days.

An appropriate order will be entered.

**ENTER**: This __7th__ day of December 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE